Your Honors, this case, given the opportunity today, I can convince you that this case should never have been dismissed on summary judgment. Your Honors, this is a case of religious discrimination and a failure to accommodate. Within 1 hour and 16 minutes, when the plaintiff made the request for accommodations, the decision was no. It was an email sent to him that the decision to accommodate his religious day off was denied. That fact alone creates a tribal issue. Because it fails, the defendants make it impossible to prove that they went through their policies and procedures on accommodation. We cited a case called Nazir v. United Airlines, which is a state case, which talks about the failure to conduct a proper investigation. And Your Honors, I would ask you reasonably, how is it possible for a company that has a written policies and procedure in place, to effectively conduct the investigation, conduct interviews, to see if an accommodation was done, and the answer was done in less than an hour and a half. More importantly, we raise at summary judgment the credibility of the declarations that were submitted. What do you think they should have done, the employer should have done? It looks like they made pretty significant efforts to try to accommodate him. What do you think they missed doing? Your Honor, first of all, they denied him the right of accommodation within 1 hour and 15 minutes of the request. What they should have done was to do what they normally do, is to check to see what available positions were open. What time frames were open. Whether or not the accommodation could be met. He has a job. The question is, there were other people who were able to do that job on different days. The question flip side, Your Honor, is simply this. They failed to provide documentation, evidence, that they engage in their own policy and procedure and said, you know what, we have accepted your request, we're going to conduct an investigation, we're going to look at the available time shifts, we're going to look at all of these items to see if we can. This is a tribal issue. But they did offer him a position that seemed to be comparable in many, maybe all respects. In terms of salary, in terms of his hours, and basically doing substantially the same type of work. Your Honor, that was done at a later date, and more importantly, it was also after he was punished. My client had an outstanding, perfect record. And all of a sudden, after he made this request. He was eventually fully accommodated. He was given back that old shift of his, right? Well, Your Honor, this was like five or six months. He was disciplined. He was disciplined for not coming into work on a Sunday. The claim is that it should have been done sooner. Oh, well, Your Honor, my job is to answer your questions. But the issue that no one will answer is, how could they say no to him within an hour and 15 minutes? How could they say no? If you make a request for an accommodation, their policy requires a fact-finding investigation. If it's a religious accommodation, if it's a disability accommodation, they have to look at the various shifts. They don't deny the fact that they said no. And we put in our deposition, in our papers, Your Honor, respectfully, the lack of experience. The three individuals who made the decision to say no. Dave Swartz, Dr. Wayne, and Larise Campbell. Those three individuals admitted they didn't go through the process and the policy. It wasn't until after he complained, then the wheels start changing. But he should have been accommodated and not punished. He was punished, Your Honor. But I'm trying to understand what actually they could have done differently, aside from, you're saying, making a more elaborate effort to investigate. What would that investigation have uncovered, and what did it eventually uncover? Your Honor, I think this is what would have uncovered. It would have uncovered the fact that they could have accommodated him. Because when they made the denial of saying no, in actuality, they have positions available. There were positions available that worked a Tuesday through Saturday shift. In fact, we put in our papers that they advertise for other employees to work a Tuesday through Saturday. What I'm saying to you, Your Honor, if I can answer your question specifically, I'm saying to you that his accommodation could have been met immediately. But they needed somebody to fill the Sunday shift, didn't they not? That's what the need was. That assumed that there was no one else who was willing, able to work that same shift. Were there other people like that? Yes, Your Honor. In fact, Your Honor, the type of work that my client was doing was being done seven days a week. They were working four days a week. And what you and I are arguing about right now forms the basis of the tribal issue. This is what we're arguing right now. You're saying there could have been somebody else in addition to Felix that they could have asked to take the Sunday shift and they never did that? That is exactly what I'm saying, Your Honor. And that is exactly where they were even in their denial of his request. They didn't say in that denial, they just said no. They didn't say, you know what, Mr. Felix, we don't have anyone. You know what, Mr. Felix, we don't have a single person to fill that shift. That email in response to his request did not explain why they couldn't accommodate him. It didn't say anything. It just said no. It didn't say no pursuant to our policy. It didn't say no to any of the questions you're asking, Your Honor. It didn't say no to any of those. It just said no. Well, maybe this is a question that I ought to ask your adversary. I might just ask both of you this question. Yes, Your Honor. When I look at the record, there's a woman named Perez, and when he was ultimately put into the position when he was accommodated eventually, somebody had to then take over his Sunday shift, correct? Yes, yes. Was it Perez who did that? Well, you know, Your Honor, I don't know if it was Perez. I don't know if it was Perez who actually took over the Sunday shift. I know that eventually sometime down the line he was accommodated. Somebody had to fill in that Sunday spot. Right. Somebody did fill in that Sunday shift. Perez, wasn't she there at the same time that Felix was there when he was tapped for the Sunday shift? I'm a little confused factually about this record. Well, Your Honor, what happened is that they created this Sunday shift. They tapped him. They tapped him. Wasn't there Perez also who could have been asked perhaps to take that shift? Yes. There were other people who were based on that. Not the only one available. Correct, Your Honor. Now, this is not the type of summary judgment dynamics which we should embrace is what you're arguing. Your Honor, when you think of this is why I cited the case of Nazir versus the United States and United Airlines. This is not the case. As you and I engage in this type of fruitful discussion, this is something that a jury can wrestle with and make the determination. I argue these points and have them try to convince a jury why they made a decision. But more importantly, when we even point out the fact that the decision was no within an hour and 15 minutes, the summary judgment is based on the separate statement. The reliance on that separate statement was a declaration of Laurice Campbell, Dase Forrest, and Mr. Wayne, respectfully, hoping you'll use an appropriate term. We destroyed those declarations. Those declarations were contradicted over and over again, and the trial judge had an obligation to give us a factual finding on our evidentiary objection. She did not. She just said with the exception of one, they're all overruled. That's not what a trial judge does when a critical stage of a summary judgment, when you do not, especially when requested. And we point in our briefs on pages 15 and 16, some of the examples where Laurice Campbell says, based on a variety of factors, we decided to give him a lower increase. What is a variety of factors? Evidentiary objections are critical to a summary judgment. And this judge respectfully abandoned her obligation to handle those evidentiary objections when requested. And we put those in our briefs. But the issue here is whether or not a summary judgment was appropriate. The Nazir case is important because it said a failure to do a proper investigation can provide a pretext and an inference that would lead to a non-legitimate business reason. And we believe our case falls squarely within the rubric of Nazir v. United Airlines. So the failure to conduct a proper investigation itself creates an issue of fact, which in your opinion should be a summary judgment. Absolutely, Your Honor. And I appreciate. I'd like to, without any question, I'd like to reserve the rest of my time to hear my colleague. Thank you, Your Honor. Thank you, Mr. Tripp. Thank you. Good morning, Your Honor. It's Timothy Hicks on behalf of Baxter. I'll ask you the same question. I'm a little confused. Perez was available also for this shift. Correct. And, Your Honor, if you look at the record at 1009, paragraph 5, Ms. Laurice Campbell did indeed ask Ms. Perez if she would change shifts to cover the Sunday shift. What we had were three people who could conduct the sterility testing. One was Mr. Patel. He had the Sunday to Wednesday shift. Ms. Perez had the Wednesday to Saturday shift. And then Mr. Felix had a Tuesday to Friday. When Mr. Patel was promoted out, we had a gap in coverage as far as Sunday and Monday, nobody to conduct the testing. When they decided which shift they were going to eliminate, the only shift that would allow elimination and continual coverage seven days a week was the elimination of Mr. Felix's test. Ms. Perez, she was also a candidate for the Sunday shift, was she not? Correct. And she was asked, and she said, I won't do it. She was asked, and he said no also. Correct. Is that sufficient? Absolutely. The judgment was granted based upon the fact that she said no and Felix said no. Absolutely. The case law, I think, clearly supports the fact that requiring another employee to move is not required to accommodate somebody else's. When was he offered the other job? Well, that's another thing. Not the one he keeps talking about. He did that six months later. Wasn't he offered another job at the same pay, same status, et cetera, pretty early in the process? Absolutely, Your Honor. And the whole characterization of this as an hour and 16 minutes or an hour and I believe 16-minute process is not supported by the record. He filled the Sunday gap when he was offered the other position. Who was going to fill in for him then? I don't understand that. What they decided to do in order to meet the needs, why they did the reorganization, was they were simply going to go to two people working the sterility testing and they needed seven-day coverage. In order to do that, they had a Sunday to Wednesday and a Wednesday to Saturday. Perez kept her Wednesday to Saturday. I'd like to hear the answer to Judge Fernandez's question. Would you pose it again? Sorry, I lost track. I know it got interrupted. My question was, I understood that he was offered a job, I think it's an EM or something like that, at the same salary, same status, et cetera, et cetera. My question was, was that early in the process? When was that? It seems to me it was, my reading of the record, that was very early in the process. Absolutely, Your Honor. It's reflected in the very email that counsel has been pointing you to, the July 17th email. It wasn't simply stating no. What was pointed out to Mr. Felix was, it should be noted that there are currently several Monday to Friday openings in EM. It stands for environmental monitoring. It's the other department within the microbiology lab. Right there, that is, we've met our burden in a reasonable accommodation case. The question is whether the offered accommodation eliminates the conflict. The minute we offered him those other shifts in environmental monitoring, that conflict is eliminated. My follow-up question is that that leaves a vacancy in the Sunday shift, which had to be filled. No, no, it doesn't, Your Honor. Well, if he goes, then we would need to fill it, yes. How would you do that, then? We would either hire somebody or transfer somebody or address it in another way. Why could you not have done that in the first instance? Well, the key, though, Your Honor, is that we offered an accommodation. We don't have to accept his accommodation. What we have to do is simply offer an accommodation that eliminates the conflict, and that is his need to not work a Sunday shift. Don't you think there's a lot of facts that ought to be flushed out to see who else was available, whether Perez could have taken this, were there other people, what they expected to do when they offered him the accommodation as to who would fill in for the Sunday spot? Do you think this is a proper case for Sunday judgment? Absolutely. You may well be correct and you may be successful, but should this have been Sunday judgment? Absolutely, Your Honor. The case law is very clear as far as what obligation on Sunday judgment has to be satisfied, that it's a two-step analysis. The first one is a question of whether an accommodation was offered. If it hasn't and it wasn't accepted, then it goes on to the hardship, but it's either or. What we've demonstrated is that an accommodation was offered to him and that he didn't take it. Let me ask you this question. If Ms. Perez said that, yeah, I would take that shift, no problem, and you were to say, no, Felix, you have to take this, do you think your case would be different? Well, then the problem would have been solved. He would have taken the non-Sunday shift and Perez would have taken the Sunday shift. But we asked her that and we have no obligation under the law to force her to take it. He makes much out of the Nazir case. I didn't see any reference to it in your brief. Maybe I overlooked it. Well, I think Nazir wasn't a religious accommodation case. It mainly dealt with the issue of summary judgment and the appropriateness of it and a number of criticisms of summary judgments. And I don't believe it addressed the crux of what the issue here is, which is what is the standard on religious accommodation and did we offer undisputed evidence, which we did, that an accommodation that eliminated the conflict was offered to him, that he also was given the opportunity to discuss this over a month period. This process started in June 4th of 2008. When Ms. Campbell told him you would need to switch shifts, she had no awareness of his Catholic belief or his need to observe the Sabbath. When he informed her of that, the whole accommodation process started. We then spent the next, from June 4th to August 2008, engaged in that process. And as part of that, what we have is the written record of the July 17th email, which offers him the environmental monitoring shift. We also have Mr. Arnold, an HR expert, who was brought into the process for the exact reason that Ms. Campbell, Mr. Schwartz, and Dr. Wang had not encountered these problems. It doesn't make them incompetent to handle them. What they did was what they were supposed to do. They drew an HR. Mr. Arnold from HR put up the fact that we have inside advantage. We have an electronic posting board of all the positions available in this factory that you can possibly take. We don't know what you're interested in. We don't know what would work best for you. Here is an opportunity. Mr. Felix has an obligation to engage in this process as well. He has an obligation to look at that, see if there's anything there that we have many, many positions that he could fill. We're not expected to guess what he might like, what he might be qualified for. We've made it all available to him, and we specifically offered him something within the lab at the same title, same pay, no harm to him at all. Is he still working there? My understanding is he is not. But that's not in this record. What do you say to your adversary's argument that this so-called investigation, I guess there's some duty to investigate. You have your own rules, and I think the law supports that, took place in an hour and an hour and a half time, and that itself raises an issue of fact as to whether that was a good faith effort to conduct a proper investigation. I absolutely disagree with the characterization of this being an hour and 16-minute process. This was a process that was well-documented throughout the record. We've cited it in our brief. It started on June 4, 2008. It proceeded all the way through August 2008. The Baxter engaged in this process with him to try and find a solution. What he wanted was his same shift, nothing to change, and he mistakes accommodation with appeasement, and that is not what the law requires. The law simply requires us to eliminate the conflict, and if we can't eliminate the conflict, then we have a burden to show hardship. I believe that we satisfy both those requirements on undisputed evidence. Most of what counsel has argued as far as facts to support the lack of an investigation or a lack of a process I believe are not supported by the record. Baxter has a policy regarding religious accommodation. It followed it. Mr. Terrell makes a point of the documentation issue. There is documentation. We have the July 17th email. We have the email from Mr. Arnold. The documentation that Mr. Terrell refers to in the policy is a discretionary. It says it should be documented. We have documented it in certain ways, and as far as the policy, we followed Baxter's policy. So there was no showing necessary to overcome what is the crux of this issue. Did we offer him something? Did that eliminate... So basically you have two people, Felix and Perez. They both say they don't want to do this, and you feel you can just pick and choose either one of them and require them to do it, right? It's your choice. No, what we did was we had the Sunday to Wednesday shift, the Wednesday to Saturday shift, and the Mr. Felix's Tuesday to Friday shift. We eliminated the shift that didn't fit. We had to keep two shifts, so we kept those two. It takes Mr. Felix and now puts him in the need of being put somewhere. I'm not explaining myself clearly, and I apologize. Did you have a choice between Perez and Felix, and you chose Felix over Perez? We did. And you have the right to do that? Absolutely. It's your choice. Our business need was for the reorganization. There's been no challenges to our... I'm not questioning that. I'm just saying how you selected two people you can put into that slot, and they both say, no, we don't want it, and you say, I pick Felix. You say it's a matter of law. It's not a summary judgment. You can get a summary judgment that's your pick, right? Absolutely, Your Honor. The key is the fact that it wasn't based on his religion or anything that he had done that we selected his shift. What we did was need seven-day coverage, and so we eliminated the shift that kept our seven-day coverage. I'm not questioning you about that. I'm just curious as to how you go about picking one over the other. Ms. Perez also has religious rights. I don't know. This is certainly not a part of the record, but we're not required to put anybody else's needs over Mr. Felix. What we're required to do is give him something that eliminates the conflict between his needs and our business needs, and if we make that offer, the statutory inquiry ends. So you could have picked Perez and you'd be in the same situation. The choice was yours, I guess, right? Well, the issue, if we had eliminated her shift and left her in flux, we would then have an issue with not having Friday or Saturday covered. Either way, we need testing done seven days a week, and the only way that we were going to do that was a Sunday to Wednesday and a Wednesday to Saturday shift. Ms. Perez was already in that Wednesday to Saturday shift, so we needed to fill the shift that Mr. Patel vacated, and that's where Mr. Felix could go in there, or he could have gone to environmental monitoring, or he could have gone to inside advantage and selected any of the many positions there and kept his title pay. Just one last question. I apologize if I didn't read the record carefully enough. Where in the record does it say is there an affidavit that we went to Ms. Perez, we asked her specifically whether she would be willing to do this, and she said no. I mean, where in the record is that? Absolutely. It's in the record at page 1009 of paragraph 5. That's an affidavit by somebody who says that. It's by Ms. Campbell. Yeah. It's not by Ms. Perez. No, it is not. Anything else? If there's nothing further, Your Honor, I'll submit. Thank you, Mr. Hicks. Mr. Terrell, you get the last word. Yes. Four quick points. Your Honor, you asked my colleague about the Nazir case. It wasn't in their brief. The Nazir case is a 2009 case, and where the Honorable Judge was asking about the motivation or the decision of Peg Perez or Mr. Felix, the Nazir case says, many employment cases present issues of intent and motive in a hostile working environment, issues not determinable on papers. Such cases, we caution, are rarely appropriate for disposition on summary judgment. And that's on page 286. That's the Nazir case, which is a 2009 case. It was not mentioned. You know, we say that time to time. If you go back 20 years, we'll say, this kind of case is not usually appropriate for summary judgment. That doesn't get one anywhere, I don't think. Every case is appropriate for summary judgment, given the appropriate facts, period. Let me, may I respond? There was another question that was asked by the Honorable Judge in which Were you responding to him or to me? Oh, no, I heard your response, and I hear what you're saying, Your Honor. The point is that I don't understand how you make anything out of the fact that some case said that. Well, because Of course it's true. Civil rights cases Sometimes it's not. Civil rights cases, when you're dealing with state of mind, we don't have the old smoking gun type of discrimination. Are you suggesting that summary judgment is never appropriate in civil rights cases? Absolutely not. I think we have zillions of those. Absolutely not. But what we have created as an alternative to the smoking gun evidence is the McDonnell-Douglas burden shifting. And we're trying to attack the pretext reason that's been given. The question that was asked about Was there a declaration from this woman who said she couldn't? And the answer was, from Larise Campbell. Everyone up here knows that type of declaration is inadmissible. It's hearsay. It's a foundational problem. And so there is not a declaration from the individual saying she couldn't work. It was from Larise Campbell. And that's lacking the personal knowledge. That's the failure of the judge to attack the evidentiary objection that we raise, which everyone knows that a summary judgment is built on a separate statement. What is, you know, come on. If we're talking about hearsay. Yes, Your Honor. If I ask you, I'm talking, I say, Are you willing to take this job? And you say, No. All right? Yes, Your Honor. That's what I say I heard. That's not a hearsay problem. It doesn't have to come in for the truth of the matter asserted. It may not be. No may not be true. Maybe she would have taken the job. We're not putting in for the truth of the matter asserted by the person who was asked. It's coming in for the truth of the matter asserted by the person who asked the question. You asked it. Yes. Did the person say no? Yes. And that's all that matters. That is not a hearsay. That is not an excludable hearsay problem. In response. I don't believe. You tell me how it is. Well, in response, Your Honor, we would have no issue with the rulings, had the trial judge made rulings on our evidentiary objections at the trial court level. She did not. I'm not disputing your proposed hypothetical where the state of mind sitting inside the truth. But at the trial court level, we made requests for evidentiary rulings, and they were not done. Well, one was granted, right? Only one. And it wasn't explained why, but we had several with Louise Campbell. I'm just not familiar with a rule that requires the judge, when faced with a gazillion objections, why she can't say all the objections are overruled except this one. I sustain this one. I don't know. Well, the lack. I don't know of any rule that says she can't do that. Well, certainly at trial, a judge doesn't have to give any reasons. Oh, no, no. It says overruled, right? Right. Plus, she granted one, which shows that she looked at them and saw merit in one and not in the others. And we would probably request a little bit more clarification on the ones that she said no. That's why we brought some of the examples to this court's attention. And we have them on the page. We address those that there were no response to on page 16 and 17, where we ask on page, for example, if I could just read one, page 15, paragraph 11, Declaration of Louise Campbell. She said, quote, in mid-August, I sent an email to various employees indicating a temporary need for coverage. I objected to that because various employees who, vague in the time period, when did it occur? There was no. Even if you're right, I mean, that goes to its weight, not whether it's admissible, doesn't it? True. Absolutely. And the issue here was that there was no indication of what weight, if any, was given to these statements as it relates to the separate statement. Because the separate statement provides the basis for the final determination of the summary judgment ruling. The other issue, as it relates to, and my final point, was the issue of the case of Nazir. I just think if the court looks at Nazir, I think it lays a pretext or an example that in the Nazir case, it was a race discrimination, but there was supposed to be an investigation. And in a lot of discrimination cases, there's supposed to be an investigation. And there was a pretext in that investigation, and that's what led to the ruling that a faulty investigation could be, in and of itself, a basis for it. Thank you, Your Honor. Thank you, Mr. Hicks. Thank you as well. The case is argued and submitted. We'll stand in recess for today. All rise. This court for this session stands adjourned. Thank you. Thank you.
judges: Block, Fernandez, Silverman